UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOTORS INSURANCE CORPORATION,

     Plaintiff,

v.                                               Case No. 11-10875

UNITED STATE OF AMERICA,             HONORABLE AVERN COHN

     Defendant.

_____/

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
### (Doc. 9)

### I. Introduction

This is a tort case.  Plaintiff Motors Insurance Corp. (MIC) has sued defendant the United States (the government) under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b).  Essentially, MIC alleges that the government is liable for the actions of two federal law enforcement officers which resulted in substantial damage to a luxury sports car owned by MIC.  MIC claims (1) conversion and (2) negligence.

Before the Court is the government's motion to dismiss for lack of subject matter jurisdiction.  The government argues that it cannot be sued based on an exception to liability under § 2680 of the FTCA for goods that are damaged while detained by law enforcement officers.  However, MIC argues that the exception does not apply because (1) it consented to the detention and/or (2) it was not detained by federal law enforcement officers.  The Court finds that the exception applies.  Accordingly, the motion will be granted.

## II.  Background

The relevant facts according to the complaint and other documents in the record follow:

On September 16, 2003, a 1995 Ferrari F50 (the vehicle) was stolen from a Ferrari dealership, Algar Ferrari, in Rosemont, Pennsylvania.  The dealer was the insured under a policy issued by MIC.  MIC paid the claim in the amount of $625,000 and assumed ownership of the vehicle.  Nearly five years later, in August of 2008, a Kentucky law enforcement unit and partner of the Federal Bureau of Investigation (FBI) recovered the vehicle in Lexington, Kentucky.

FBI and local law enforcement representatives contacted MCI, requesting that they be able to continue to store the vehicle through the investigation and prosecution of the suspected thief, Tom Baker.  MIC consented to the request.  The vehicle was stored in Lexington, Kentucky.

On May 27, 2009, FBI Special Agent Frederick Kingston (Kingston), accompanied by a passenger, Assistant United States Attorney J. Hamilton Thompson (Thompson), drove the vehicle from the storage facility, lost control, and crashed it.  The circumstances as to why Kingston and Thompson were driving the vehicle are not entirely clear.[1]  At least one document in the record indicates that Thompson was moving the vehicle to return it to MIC.

MIC says that, prior to the collision, the vehicle had a fair market value of

---

[1]MIC has filed a separate case against the government under the Freedom of Information Act, MIC v. Department of Justice, 11-10762, which is assigned to the undersigned.  Whether this case has any vitality in light of the Court's decision is not clear.

$750,000 and that the loss from the damage was total.

On June 9, 2009, Baker plead guilty under a Rule 11 agreement to possession of a stolen vehicle in violation of 18 U.S.C. § 2313.

On June 17, 2009, the FBI informed MIC of the accident and that it could submit a claim for damages.  On July 15, 2009, MIC submitted a claim for damages in the amount of $750,000.  On March 10, 2009, the government denied the claim, stating that the accident "took place with the Ferrari was being detained by the FBI."  The government denied reconsideration.

### III.  Legal Standard

A motion to dismiss pursuant to Fed. R. of Civ. P. 12(b)(1) may either challenge jurisdiction on the face of the complaint or may contest the factual basis for jurisdiction. Golden v. Gorno Bros., Inc., 410 F.3d 879,881 (6th Cir. 2005).  Where, as here, the defendant makes a facial challenge, the plaintiff must show that the complaint "alleges a claim under federal law, and that the claim is 'substantial.'"  GTE North, Inc. v. Strand, 209 F.3d 909, 915 (6th Cir. 2000) (quoting Musson Theatrical, Inc. v. Fed. Express Corp., 89 F.3d 1244, 1248 (6th Cir. 1996)).  In deciding a facial challenge, the court is to take as true the well-pleaded factual allegations appearing in plaintiff's complaint and exhibits.  See DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004); Fed. R. Civ. P. 10(c).

### IV.  Analysis

### A.  Sovereign Immunity and the FTCA

Sovereign immunity prevents suits against the United States without its consent

3

and precludes district courts' jurisdiction.  See United States v. Mitchell, 463 U.S. 206,

212 (1983).  "Without jurisdiction, the court cannot proceed at all in any cause."  Steel

Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998).  Although the FTCA

constitutes a waiver by the United States of its sovereign immunity that grants

jurisdiction to the district courts, such jurisdiction is limited to particular circumstances.

See Flechsig v. United States, 991 F.2d 300, 303 (6th Cir. 1993).  The FTCA defines

this jurisdictional scope.  Id.  28 U.S.C. § 1346(b)(1) provides that district courts have

exclusive jurisdiction over claims against the United States for damages caused by the

negligence of federal employees while acting within the scope of their employment,

under circumstances where the United States, if a private individual, would be liable

under state law.  Id.

However, the jurisdiction allowed by the FTCA is subject to a host of enumerated

exceptions listed in 28 U.S.C. § 2680.  At issue here is § 2680(c), which states that the

waiver of sovereign immunity does not apply to "[a]ny claim arising in respect of . . . the

detention of any goods, merchandise or other property by any officer of customs or

excise of any other law enforcement officer."  This is known as the "detention-of-goods"

exception.  The government says that because the vehicle was damaged while being

detained by the FBI, MIC's claims fall squarely under the exception, and therefore the

Court lacks subject matter jurisdiction.  As noted above, MIC argues that the exception

does not apply because (1) the vehicle was being held with MIC's consent and was

therefore not detained and (2) the vehicle was held by local law enforcement and

therefore not in the possession of a federal law enforcement officer.  Each argument will

be addressed in turn.

4

### B.  Whether the Vehicle Was Detained

MIC concedes that, with or without a citizen's consent, the DOJ "certainly has legal authority to seize and hold property, including property owned by third parties, as part of criminal investigations."  MIC's response brief, Doc. 13, p. 14 (quoting Zurcher v. Stanford Daily, 436 U.S. 547, 554-5 (1978)).  MIC, however, says that because it consented to law enforcement's request to hold its vehicle as evidence, its consent rendered the status of the vehicle as having been entrusted to law officers, rather than detained by them under § 2680(c).  MIC says that "the concept behind 'detention' of [property] is the deprivation of control and a right of dominion over [that property]."  Id. at 13 (quoting H. Schnell & Co., Inc. v. United States, 1988 WL 120396, at *2 (S.D.N.Y. 1988) (unpublished)).  MIC then suggests that its consent foreclosed the possibility of this form of deprivation from occurring.  MIC is mistaken.

In determining the purpose of the word "detention," the Court is to assume that "the legislative purpose is expressed by the ordinary meaning of the words used." Kosak v. United States, 465 U.S. 848, 853 (1984) (quoting American Tobacco Co. v. Patterson, 456 U.S. 63, 68 (1982)).  The word "consent" appears nowhere within the statutory text of § 2680(c), nor is the ordinary meaning of the word "detention" determined by one's consent.  Webster's defines "detention" as "a detaining or being detained," specifically, "a keeping in custody; confinement." Webster's New World College Dictionary 393 (4th ed. 2007).  Black's Law Dictionary defines "detention" in the context of property as the "custody of property; esp., an employee's custody of the employer's property without being considered as having legal possession of it." 514 (9th ed.  More importantly, the Sixth Circuit has stated:

5

A detention is generally associated with a period of temporary custody or delay. It carries no connotation of permanent custody, <u>nor does it necessarily suggest an adversarial interest insofar as ownership is concerned</u>. It is a term often associated with an ongoing investigation.

<u>Kurinsky v. United States</u>, 33 F.3d 594, 597 (6th Cir. 1994) (emphasis added), <u>overruled on other grounds</u> by <u>Ali v. Fed. Bureau of Prisons</u>, 552 U.S. 214 (2008).[2]

Thus, there is no merit to the argument that MIC's consent has any bearing on whether the exception applies. The vehicle was detained within the meaning of the statute. <u>See Kosak</u>, 465 U.S. at 862 (noting that altering the detention-of-goods exception is a task properly assigned to Congress and not the courts).

In sum, MIC's consent does not change the fact that its claims arise out of the vehicle's detention within the meaning of § 2680(c). MIC seems to misunderstand the role it and its vehicle occupied in the criminal investigation and prosecution that took place. The government's purpose in holding the vehicle was not to create a status of either consent or punitive coercion between law enforcement and the vehicle's innocent

---

[2]MIC relies on language from Justice Kennedy's dissenting opinion in <u>Ali</u>, in which he stated that a detention is marked by "compulsory," "forced," or "punitive" containment. <u>Ali</u>, 552 U.S. 214, 235 (2008) (Kennedy, J., dissenting). Putting aside that the language is dicta and otherwise non-binding, construing the term "detention" under the FTCA to require some adversarial or punitive component would run contrary to the principle that waivers of sovereign immunity are to be strictly construed in favor of the sovereign. <u>See Lane v. Pena</u>, 518 U.S. 187, 192 (1996). Moreover, by simply "consenting" to a detention, a party could escape the application of the exemption should the property be damaged while in the government's possession. Such an interpretation would render the exemption meaningless. Moreover, there is clear authority for the government to seize and retain property as part of a criminal investigation, even if the property belongs to an innocent third-party. <u>See Amerisource Corp. v. United States</u>, 525 F.3d 1149 (Fed. Cir. 2008) (en banc) (holding that pharmaceutical drugs belonging to a third-party which were seized by federal authorities pursuant to a criminal investigation did not constitute a taking under the Fifth Amendment). In other words, had MIC refused consent, the government could have, and would have, taken the vehicle into its custody.

owner, MIC.  Rather, the object was to control and preserve relevant evidence, so as to

see the criminal justice process through to a conclusion.  Therefore, simply because the

government did not aim to force or punish MIC by holding the vehicle, it does not follow

that the vehicle was not detained.  More accurately, while its vehicle remained in

custody, MIC was unable to exercise the right of possession over it.  MIC does not

allege that if it had asked for the vehicle's return, the government would have given it

back.  As such, it was "detained" within the meaning of the statute.

### C. Whether the Vehicle was Stored by "Law Enforcement Officers"

MIC also says the exemption does not apply because if the vehicle was stored by

local law enforcement officers, it was not detained by a "law enforcement officer."

The complaint alleges:

16.  MIC was contacted by representative of the FBI and local law enforcement agency regarding their requests to maintain the Ferrari F50 in storage while the investigation was continuing.
         . . .
18.  Upon information and belief, the FBI and the local law enforcement agency in Kentucky stored the Ferrari F50 in Lexington, Kentucky, during the investigation and subsequent prosecution of the individual alleged to have stolen it.

Complaint at ¶ 16, 18.

The complaint clearly alleges that <u>the FBI</u> and local law enforcement were

involved in the storage of the vehicle.  The text of § 2680(c) does not distinguish

between "federal" law enforcement offices and "state and local" law enforcement

officers, nor does it indicate that detention must be solely by federal law enforcement

officers.  MIC asks the Court to extrapolate that the "[detention by] any other law

enforcement officer" clause in § 2680(c) refers exclusively to federal officers.  Although

7

the term "law enforcement officer" is not defined in the text of 28 U.S.C. § 2680(c), that

term is defined in 28 U.S.C. § 2680(h) as "any officer of the United States who is

empowered by law to execute searches, to seize evidence, or to make arrests for

violations of Federal law." 28 U.S.C. § 2680(h).  The Supreme Court has made clear

that the term "law enforcement officer" is to be interpreted expansively and means

literally what it says: any law enforcement officer.  Ali, 552 U.S. at 218-19 ("read

naturally, the word 'any' has an expansive meaning, that is, 'one or some

indiscriminately of whatever kind'" (quoting United States v. Gonzales, 520 U.S. 1, 5

(1997)).  In Ali, the Supreme Court noted that, in interpreting other statutes containing

the term "any law-enforcement officer," the term was properly read to apply only to

federal officers; however, the Supreme Court went on to make clear that "[n]one of the

circumstances that motivated our decisions in [those] cases [are] present here." Id. at

221 n.4.  The Court is not inclined to read a limitation into the statute's text.  See id. at

221 ("Congress could not have chosen a more all-encompassing phrase than 'any other

law enforcement officer' to express [its intent to cover all law enforcement officers]").

Moreover, even if the vehicle was, as MIC suggests, "held and stored" by

someone other than "law enforcement officers," this would not defeat application of the

detention-of-goods exception.  Other courts that have held that § 2680(c) applies to

property held by third-party surrogates of federal law enforcement officers.  See United

States v. Norwood, 602 F.3d 830, 833 ("[P]roperty seized by law enforcement officers

and transferred to a third party is deemed still 'detained' by the officers."(citing cases);

see also Cosmomar Shipping Co. v. United States, 231 F. Supp. 2d 1353 (S.D. Ga.

2002) (exception applied where U.S. Marshals took custody of ship and then contracted

8

with a third party to act as the ship's custodian and ship was damaged while in substitute custodian's custody).  Other courts have also broadly interpreted the term "law enforcement officer" in applying 28 U.S.C. § 2680(c).  See Schlaebitz v. United States Dep't of Justice, 924 F.2d 193, 194 (11th Cir. 1991) (federal Marshals included); see also Ysasi v. Rivkind, 856 F.2d 1520, 1525 (Fed. Cir. 1988) (INS border patrol agents included); Formula One Motors, Ltd. v. United States, 777 F.2d 822, 823 (2nd Cir. 1985) (DEA agents included); United States v. 2,116 Boxes of Boned Beef, 726 F.2d 1481, 1490-91 (10th Cir. 1984) (USDA inspectors included); United States v. Lockheed L-188 Aircraft, 656 F.2d 390, 397 (9th Cir. 1979) (FAA employees included). There is nothing in §§ 2680(c) or (h) to indicate that, if federal law enforcement officers procure local help, or utilize local facilities to secure potential criminal evidence, the government means to cede its sovereign immunity.

Moreover, regardless of who was "storing" the vehicle at the time, FBI clearly had sufficient control over the vehicle to be able to enter the facility, have access to the keys, and drive the vehicle from the facility.  Indeed, if it was true that a federal law enforcement officer did not recover, store, or otherwise detain the vehicle at any time, then it would not be possible for MIC to bring a claim against the government for the damage to the vehicle.  The only way the government could be tied to the vehicle's damage is because a federal law enforcement officer (i.e., an FBI agent), detained the vehicle (i.e., was in custody and control of the vehicle) when it was damaged.  See Compl. ¶¶ 36-37 (alleging that the FBI agent "exercised dominion and control" over the vehicle and that the vehicle was damaged "while in the possession" of the FBI agent).

### D.  Request for Discovery

MIC also says that it needs discovery to determine the exact circumstances of the detention, including whether the vehicle was detained by only local law enforcement officers and the circumstances of its destruction.  MIC says that discovery is necessary to resolve the instant motion.  The Court disagrees.  First, the government made a facial challenge to jurisdiction and the Court, as required, accepted all of MIC's allegations in the complaint as true.  The Court need not assume facts that MIC may be able to prove that have not been alleged.  The allegations in the complaint, which set forth in sufficient detail the circumstances of the vehicle's detention and destruction, show that the exception to tort liability applies.  A plaintiff is not entitled to discovery where the Court needs no further information to decide a motion to dismiss for lack of jurisdiction.  See United States ex rel. v. Poteet, 552 F.3d 503, 519 (6th Cir. 2009) Finally, as explained in the government's papers, MIC's discovery requests are overboard and otherwise not relevant as to whether § 2680(c) applies.[3]

---

[3]In seeking discovery, MIC suggests that the federal agent took and crashed its $750,000 Ferrari while on a "joyride."  If this was indeed the case, that fact would not help MIC.  As the government points out, the FTCA narrows the context of liability to its employees' tortious acts performed within the scope of their employment.  28 U.S.C. § 1346(b)(1).  Whether an employee acted within this scope is a matter of state law.  See RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1143 (6th Cir.1996).  Under Michigan law, an employee is acting within the scope of his employment unless he "steps aside from his employment to . . . accomplish some purpose of his own."  Green v. Shell Oil Co., 181 Mich. App. 439, 444 (1989) (quoting Martin v. Jones, 302 Mich. 355, 356 (1942)).  The question is whether the employee "could in some way have been held to have been promoting his master's business."  Bryant v. Brannen, 180 Mich. App. 87, 95 (1989).  The use by federal employees of a detained vehicle for pleasure a/k/a "joy riding" would very likely fall outside of the scope of their employment.  If that were the case, MIC would not be able to bring a claim against the government in the first instance.

## V.  Conclusion

It is certainly unfortunate what befell MIC's vehicle.  However, the vehicle was damaged while being detained by law enforcement officers within the meaning of § 2680(c).  As such, the government cannot be liable under the FTCA for what occurred. Accordingly, the government's motion is GRANTED.  This case is DISMISSED.

SO ORDERED.


 S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated:  September 27, 2011


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, September 27, 2011, by electronic and/or ordinary mail.


 S/Julie Owens
Case Manager, (313) 234-5160

11